**United States District Court**
**District of North Dakota**
**Western Division**

| | |
|---|---|
| Ashleigh Hoffman, | |
| *On behalf of herself and those similarly situated,* | |
| Plaintiff, | **COMPLAINT** **AND** **DEMAND FOR JURY TRIAL** |
| v. | |
| Deja Vu Pizza, LLC d/b/a Papa John's Pizza; Northern Bay Pizza, LLC d/b/a Papa John's Pizza; Harold Rose; Steve Ritchie; Timothy O'Hern; Sara Lewis; Doe Corporations 1-10; John Doe 1-10 | |
| Defendants. | : |

Class and Collective Action Complaint

1.      Ashleigh Hoffman, on behalf of herself and similarly-situated individuals, brings this action against Defendants Deja Vu Pizza, LLC d/b/a Papa John's Pizza.; Northern Bay Pizza, LLC d/b/a Papa John's Pizza; Steve Ritchie, Timothy O'Hern, Sara Lewis and Harold Rose ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Wisconsin wage and hour laws, and for unjust enrichment.

2.      Defendants are the current or former owners and/or operators of multiple Papa John's Pizza locations in North Dakota and Wisconsin ("Defendants' Papa John's Stores").

1

3.      Defendants' Papa John's Stores are currently owned and operated by Papa John's franchise operator Harold Rose.

4.      Upon information and belief, during the time period relevant to this lawsuit, Defendants' Papa John's Stores were sold or otherwise transferred from Defendants Northern Bay Pizza, LLC, Steve Ritchie, Timothy O'Hern, and Sara Lewis to Defendants Déjà vu Pizza, LLC and Harold Rose.

5.      Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Stores.

6.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and Wisconsin's minimum wage law by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

7.      All delivery drivers at the Defendants' Stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

**Jurisdiction and Venue**

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Wisconsin law claims.

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(3) because Defendant Deja Vu Pizza, LLC resides in this district.

2

## Parties

**Plaintiff**

**Ashleigh Hoffman**

11.     Plaintiff Ashleigh Hoffman is a resident of Wisconsin.

12.     Plaintiff was an "employee" of all Defendants as defined in the FLSA and Wisconsin wage and hour laws.

13.     Plaintiff has given written consent to join this action.

**Defendants**

Defendants' Papa John's Stores have been owned and/or operated by a number of entities and individuals, each of whom employed Plaintiff and the Delivery Drivers

**Deja Vu Pizza, LLC.**

14.     Defendant Deja Vu Pizza, LLC is a limited liability corporation organized and existing under the laws of North Dakota.

15.     Upon information and belief, Deja Vu Pizza, LLC owns at least five Papa John's Pizza Stores in North Dakota and four Papa John's Pizza Stores in Wisconsin.

16.     Deja Vu Pizza, LLC is owned and operated by Defendant Harold Rose.

17.     Deja Vu Pizza, LLC is a franchisee of Papa John's International, Inc.

18.     Deja Vu Pizza, LLC had/has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

19.     Deja Vu Pizza, LLC had/has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

20.     At all relevant times, Deja Vu Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring,

3

firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

21.     Deja Vu Pizza, LLC was/is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Wisconsin wage and hour laws.

22.     At all relevant times, Deja Vu Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

23.     Upon information and belief, Deja Vu Pizza, LLC entered into a transaction to purchase or otherwise take ownership of Defendants' Papa John's Stores, which had previously been owned and operated by Northern Bay Pizza, LLC, Steve Ritchie, Timothy O'Hern, and Sara Lewis (collectively "the Predecessor").

24.     Upon information and belief, Deja Vu Pizza, LLC is liable as a successor in interest for damages suffered by Plaintiff and the delivery drivers at Defendants' Papa John's Stores during all relevant times while Defendants' Papa John's stores were owned and operated by the Predecessors because:

    a)  Upon information and belief there is an express or implied agreement by Deja Vu Pizza, LLC to assume the Predecessors' liability;

    b)  Upon information and belief, the transfer of Defendants' Papa John's Stores from the Predecessors to Deja Vu Pizza, LLC was a de facto merger;

    c)  Upon information and belief, Deja Vu Pizza, LLC has the ability to provide relief for the claims alleged;

    d)  Upon information and belief, Deja Vu Pizza, LLC uses the same facilities as the Predecessors;

4

e)  Upon information and belief, there is substantial continuity of business operations between Deja Vu Pizza, LLC's business the Predecessors' business;

f)  Upon information and belief, Deja Vu Pizza, LLC uses the same or substantially the same workforce as the Predecessors;

g)  Upon information and belief, that Deja Vu Pizza, LLC uses the same or substantially the same supervisory personnel as the Predecessors;

h)  Upon information and belief, the same jobs exist under substantially the same working conditions at Defendants' Papa John's Stores as they did when the stores were owned by the Predecessors;

i)  Upon information and belief, Deja Vu Pizza, LLC uses the same machinery, equipment, and methods of production that the Predecessors did; and

j)  Upon information and belief, Deja Vu Pizza, LLC produces the same product as the Predecessors.

25.    Deja Vu Pizza, LLC's gross revenue exceeds $500,000 per year.

**Northern Bay Pizza, LLC**

26.    Defendant Northern Bay Pizza, LLC was a foreign limited liability company authorized to do business under the laws of Wisconsin.

27.    Upon information and belief, Northern Bay Pizza, LLC entered into a transaction to sell or otherwise transfer ownership of Defendants' Papa John's Stores to Deja Vu Pizza, LLC and Harold Rose (collectively "the Successors") in February 2020.

28.    Upon information and belief, Northern Bay Pizza, LLC owned five Papa John's Pizza Stores in North Dakota and four Papa John's Pizza Stores in Wisconsin until February 2020.Prior to the sale of the Defendants' Papa John's Stores to the Successors, Northern Bay Pizza,

LLC had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

29.     Prior to the sale of the Defendants' Papa John's Stores to the Successors, Northern Bay Pizza, LLC had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

30.     Prior to the sale of the Defendants' Papa John's Stores to the Successors, Northern Bay Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

31.     Prior to the sale of the Defendants' Papa John's Stores to the Successors, Northern Bay Pizza, LLC was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Wisconsin wage and hour laws.

32.     Prior to the sale of the Defendants' Papa John's Stores to the Successors, Northern Bay Pizza, LLC was an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

33.     Prior to the sale of the Defendants' Papa John's Stores to the Successors, Northern Bay Pizza, LLC's gross revenue exceeds $500,000 per year.

**Harold Rose**

34.     Harold Rose is the current owner and CEO of Deja Vu Pizza, LLC.

35.     Upon information and belief, Harold Rose entered into a transaction to purchase or otherwise take ownership of Defendants' Papa John's Stores.

36.     Harold Rose is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and Wisconsin law because he owns and operates

6

the Defendants' Papa John's Stores, serves as manager of the Defendant entities, ultimately controls significant aspects of the Defendants' Papa John's Stores' day-to-day functions, and ultimately has control over-compensation and reimbursement of employees. 29 U.S.C. § 203(d).

37.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has a role in significant aspects of the Defendants' Papa John's Stores day-to-day operations.

38.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has had control over Defendants' Papa John's Stores' pay policies.

39.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has had power over personnel and payroll decisions at the Defendants' Papa John's Stores, including but not limited to influence of delivery driver pay.

40.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's Stores.

41.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's Stores.

42.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has had the power to transfer the assets and liabilities of Defendants' Papa John's Stores.

43.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has had the power to declare bankruptcy on behalf of the Defendants' Papa John's Stores.

44.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has had the power to enter into contracts on behalf of each of Defendants' Papa John's Stores.

45.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose has had the power to close, shut down, and/or sell each of Defendants' Papa John's Stores.

46.     Since approximately February 2020, by virtue of his role as owner and CEO of the Defendants' Papa John's Stores, Harold Rose had authority over the overall direction of each of Defendants' Papa John's Stores and was ultimately responsible for their operations.

47.     Since approximately February 2020, Defendants' Papa John's Stores have functioned for Harold Rose's profit.

48.     Since approximately February 2020, Harold Rose has had influence over how the Defendants' Papa John's Stores can run more profitably and efficiently.

49.     Upon information and belief, Harold Rose is liable as a successor in interest for damages suffered by Plaintiff and the delivery drivers at Defendants' Papa John's Pizza stores during all relevant times while Defendants' Papa John's Stores were owned and operated by the Predecessors because:

        k)  Upon information and belief, there is an express or implied agreement by Harold Rose to assume the Predecessors' liability;

8

l)  Upon information and belief, the transfer of the Defendants' Papa John's Stores from the Predecessors to Harold Rose was a de facto merger;

m)  Upon information and belief, Harold Rose has the ability to provide relief for the claims alleged;

n)  Upon information and belief, Harold Rose uses the same facilities as the Predecessors;

o)  Upon information and belief, there is substantial continuity of business operations between Harold Rose's business and the Predecessors' business;

p)  Upon information and belief, Harold Rose uses the same or substantially the same workforce as the Predecessors;

q)  Upon information and belief, Harold Rose uses the same or substantially the same supervisory personnel as the Predecessors;

r)  Upon information and belief, the same jobs exist under substantially the same working conditions at Defendants' Papa John's Stores as they did when the stores were owned by the Predecessors;

s)  Upon information and belief, Harold Rose uses the same machinery, equipment, and methods of production that the Predecessors did; and

t)  Upon information and belief, Harold Rose produces the same product as the Predecessors.

**Steve Richie**

50.  Steve Richie was a co-owner of Northern Bay Pizza, LLC prior to the sale of the company to the Successors.

51.     Steve Richie is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and Wisconsin law because he owned and operated the Defendants' Papa John's Stores, served as manager of the Defendant entities, ultimately controlled significant aspects of the Defendants' Papa John's Stores' day-to-day functions, and ultimately had control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

52.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had a role in significant aspects of the Defendants' Papa John's Stores day-to-day operations.

53.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had control over Defendants' Papa John's Stores' pay policies.

54.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had power over personnel and payroll decisions at the Defendants' Papa John's Stores, including but not limited to influence of delivery driver pay.

55.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's Stores.

56.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's Stores.

10

57.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had the power to transfer the assets and liabilities of Defendants' Papa John's Stores

58.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had the power to declare bankruptcy on behalf of the Defendants' Papa John's Stores.

59.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had the power to enter into contracts on behalf of each of Defendants' Papa John's Stores.

60.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had the power to close, shut down, and/or sell each of Defendants' Papa John's Stores.

61.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Steve Richie had authority over the overall direction of each of Defendants' Papa John's Stores and was ultimately responsible for their operations.

62.     During some or all of the relevant time period, Defendants' Papa John's Stores functioned for Steve Richie's profit.

63.     During some or all of the relevant time period, Steve Richie had influence over how the Defendants' Papa John's Stores could run more profitably and efficiently.

**Timothy O'Hern**

64.     Timothy O'Hern was a co-owner of Northern Bay Pizza, LLC prior to the sale of the company to the Successors.

65.     Timothy O'Hern is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and Wisconsin law because he owned and operated the Defendants' Papa John's Stores, served as manager of the Defendant entities, ultimately controlled significant aspects of the Defendants' Papa John's Stores' day-to-day functions, and ultimately had control over-compensation and reimbursement of employees. 29 U.S.C. § 203(d).

66.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Timothy O'Hern had a role in significant aspects of the Defendants' Papa John's Stores day-to-day operations.

67.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Timothy O'Hern had control over Defendants' Papa John's Stores' pay policies.

68.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Timothy O'Hern had power over personnel and payroll decisions at the Defendants' Papa John's Stores, including but not limited to influence of delivery driver pay.

69.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Timothy O'Hern had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's Stores.

70.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Timothy O'Hern had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's Stores.

71.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Timothy O'Hern had the power to transfer the assets and liabilities of Defendants' Papa John's Stores.

72.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Timothy O'Hern had the power to declare bankruptcy on behalf of the Defendants' Papa John's Stores.

73.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores, Timothy O'Hern had the power to enter into contracts on behalf of each of Defendants' Papa John's Stores.

74.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Timothy O'Hern had the power to close, shut down, and/or sell each of Defendants' Papa John's Stores.

75.     During some or all of the relevant time period, by virtue of his role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Timothy O'Hern had authority over the overall direction of each of Defendants' Papa John's Stores and was ultimately responsible for their operations.

76.     During some or all of the relevant time period, Defendants' Papa John's Stores functioned for Timothy O'Hern's profit prior to the sale of the company.

77.     During some or all of the relevant time period, Timothy O'Hern had influence over how the Defendants' Papa John's Stores could run more profitably and efficiently prior to the sale of the company.

**Sara Lewis**

78.     Sara Lewis was a co-owner of Northern Bay Pizza, LLC prior to the sale of the company to the Successors.

79.     Sara Lewis is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and Wisconsin law because she owned and operated the Defendants' Papa John's Stores, served as manager of the Defendant entities, ultimately controlled significant aspects of the Defendants' Papa John's Stores' day-to-day functions, and ultimately had control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

80.     During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sara Lewis had a role in significant aspects of the Defendants' Papa John's Stores day-to-day operations.

81.     During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sara Lewis had control over Defendants' Papa John's Stores' pay policies.

82.     During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sara Lewis had power over personnel and payroll decisions at the Defendants' Papa John's Stores, including but not limited to influence of delivery driver pay.

83.     During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sarah Lewis had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's Stores.

84. During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores, Sarah Lewis had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's Stores.

85. During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sarah Lewis had the power to transfer the assets and liabilities of Defendants' Papa John's Stores.

86. During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sarah Lewis had the power to declare bankruptcy on behalf of the Defendants' Papa John's Stores.

87. During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sarah Lewis had the power to enter into contracts on behalf of each of Defendants' Papa John's Stores.

88. During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sarah Lewis had the power to close, shut down, and/or sell each of Defendants' Papa John's Stores.

89. During some or all of the relevant time period, by virtue of her role as co-owner of the Defendants' Papa John's Stores prior to the sale of the company, Sarah Lewis had authority over the overall direction of each of Defendants' Papa John's Stores and was ultimately responsible for their operations.

90. During some or all of the relevant time period Defendants' Papa John's Stores functioned for Sarah Lewis's profit.

91. During some or all of the relevant time period Sarah Lewis had influence over how the Defendants' Papa John's Stores could run more profitably and efficiently.

**Doe Corporation 1-10**

92.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of Defendants' Papa John's Stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's Stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

93.     Upon information and belief, Deja Vu Pizza, LLC, Northern Bay Pizza, LLC, Steve Ritchie, Timothy O'Hern, Sara Lewis and Harold Rose owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' operation.

94.     Upon information and belief, the franchisor, Papa John's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Papa John's Stores.

95.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

96.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's Stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

97.     Upon information and belief, the Defendants entered into co-owner relationships with a number of managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's Stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

98.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

99.     During all relevant times, Defendants have operated the Defendants' Papa John's Stores.

100.    Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Papa John's Stores.

101.    All delivery drivers employed at the Defendants' Papa John's Stores over the last three years have had essentially the same job duties.

102.    The delivery drivers at the Defendants' Papa John's Stores worked dual jobs, one where they completed deliveries and received tips, and another when they helped inside the store and did not receive tips.

103.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Papa John's Stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

104.    Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while delivering Defendants' products to its customers.

105.    Defendants require delivery drivers at the Defendants' Papa John's Stores to provide cars to use while completing deliveries for Defendants.

106.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

17

107.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

108.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

109.    Plaintiff and similarly situated delivery drivers receive a per-delivery reimbursement payment that is less than the IRS standard business mileage rate.

110.    Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

111.    The Defendants' Papa John's Stores do not track or record the delivery drivers' actual expenses.

112.    The Defendants' Papa John's Stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

113.    The Defendants' Papa John's Stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

114.    The Defendants' Papa John's Stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

18

115.    The Defendants' Papa John's Stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

116.    The Defendants' Papa John's Stores do not collect receipts of delivery drivers' automobile registration costs.

117.    The Defendants' Papa John's Stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

118.    The Defendants' Papa John's Stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Defendants' Papa John's Stores.

119.    The Defendants' Papa John's Stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

120.    The Defendants' Papa John's Stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

121.    The Defendants' Papa John's Stores do not reasonably approximate the delivery drivers' expenses.

122.    The Defendants' Papa John's Stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

123.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    2018: 54.5 cents/mile
    2019: 58 cents/mile
    2020: 57.5 cents/mile
    2021: 56 cents/mile

124.    The delivery drivers at the Defendants' Papa John's Stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—e.g., cell phone and data charges.

125.    The delivery drivers at the Defendants' Papa John's Stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

126.    Defendants reimbursed their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

127.    Defendants reimbursed their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

128.    Defendants benefit from the delivery drivers at the Defendants' Papa John's Stores spending time off the clock repairing and maintaining their vehicles.

129.    Defendants benefit from delivery drivers at the Defendants' Papa John's Stores taking on the risk of using their vehicles to drive for Defendants' business.

130.    Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

131.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Wisconsin law.

132.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Papa John's Stores.

133.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred

unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

134.    Defendants have failed to properly take a tip credit from Plaintiffs'. wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

135.    Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

136.    Defendants have willfully failed to pay federal and Wisconsin state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Papa John's Stores and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

### Plaintiff's Individual Factual Allegations

137.    Plaintiff worked at the Defendant's Papa John's Stores in Green Bay, Wisconsin from 2012 to September 28, 2020.

138.    Plaintiff worked dual jobs. One job where Plaintiff is on the road making deliveries and receiving tips, and another job when Plaintiff helps with tasks inside the store and does not receive tips.

139.    Plaintiff was paid minimum wage minus a tip credit for all hours worked while delivering..

140.    When Plaintiff was not delivering food, she worked inside the restaurant. Her work inside the restaurant included managing the store, doing dishes, cleaning, folding boxes, stocking the cooler, answering phones, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

21

141.    Plaintiff was paid slightly above minimum wage for the hours she works inside the store in a non-managerial capacity.

142.    Plaintiff was required to use her own car to deliver pizzas while working as a delivery driver.

143.    Plaintiff was reimbursed for the business use of her vehicle varying rates between $0.75 and $1.25 per delivery.

144.    Plaintiff regularly drove approximately 6 miles per round trip delivery.

145.    As a result, Defendants' reimbursement policy resulted in Plaintiff receiving approximately between $0.125 to $0.208 per mile, $0.166 on average.

146.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

147.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

148.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

149.    Defendants did not track the actual expenses incurred by Plaintiff.

150.    Defendants did not ask Plaintiff to provide receipts of the expenses she incurred while delivering pizzas for Defendants.

151.    Defendants did not reimburse Plaintiff based on her actual delivery-related expenses.

152.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

153.    Defendants did not reimburse Plaintiff based on a reasonable approximation of her expenses.

154.    Plaintiff regularly made approximately 3 deliveries per hour during the hours she worked as a delivery driver.

155.    In 2019, for example, the IRS business mileage reimbursement was $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS rate as the proper measure of Plaintiff's automobile expenses, every mile driven on the job decreased her net wages by approximately $.414 ($.575 - $.166) per mile. Considering Plaintiff's estimate of about 6 miles per delivery, Defendants under-reimbursed her about $2.64 per delivery ($.414 x 6 miles).

156.    Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants had taken more of a tip credit than they informed Plaintiff they would be taking.

157.    Defendants failed to pay Plaintiff minimum wage as required by law.

**Collective Action Allegations**

158.    Plaintiff brings the First Count on behalf of herself and

> All similarly situated current and former delivery drivers employed at the Defendants' Papa John's Stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

159.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

160.    Defendants' unlawful conduct is pursuant to a company policy or practice.

161.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

162.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

163.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

164.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

165.    The FLSA Collective members are readily identifiable and ascertainable.

166.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

167.    Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Papa John's Stores in the State of Wisconsin between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("Wisconsin Wage Class").

168.    Plaintiff brings the Fourth Count under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Papa John's Stores in the State of Wisconsin between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Unjust Enrichment Class") (Combined with Wisconsin Wage Class "Rule 23 Classes")

169.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

170.    The number and identity of the Wisconsin Wage Class members are ascertainable from Defendants' records.

171.    The number and identity of the Unjust Enrichment Class members are ascertainable from Defendants' records.

172.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

173.    All of the records relevant to the claims of members of the Rule 23 Classes should be found in Defendants' records.

174.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

175.    Notice can be provided by means permissible under Rule 23.

176.    The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

177.    There are more than 50 Rule Wisconsin Wage Class members.

178.    There are more than 50 Rule Unjust Enrichment Class members

179.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

180.    Plaintiff and the members of the Rule 23 Classes were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, untimely payment of wages, and being unjustly enriched by their automobile policy.

181.    Plaintiff and the Wisconsin Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Wisconsin wage law.

182.    Plaintiff and the Unjust Enrichment Class members have all unjustly enriched Defendants in the same way.

183.    Plaintiff and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

184.    Plaintiff is able to fairly and adequately protect the interests of the Wisconsin Wage Class and has no interests antagonistic to the Wisconsin Wage Class.

185.     Plaintiff is able to fairly and adequately protect the interests of the Unjust Enrichment Class and has no interests antagonistic to the Unjust Enrichment Class.

186.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

187.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

188.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

189.     The Wisconsin Wage Class and the Unjust Enrichment Class are proper treated as subclasses pursuant to Rule 23(c)(5).

190.     Common questions of law and fact exist as to the Wisconsin Wage Class that predominate over any questions only affecting Plaintiff and the Wisconsin Wage Class members individually and include, but are not limited to:

     a.  Whether Plaintiff and the Wisconsin Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

     b.  Whether Plaintiff and the Wisconsin Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    c.   Whether Plaintiff and the Wisconsin Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.   Whether Defendants reimbursed Plaintiff and the Wisconsin Wage Class members for their actual expenses;

    e.   Whether Defendants reimbursed Plaintiff and the Wisconsin Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    f.   Whether Defendants properly reimbursed Plaintiff and the Wisconsin Wage Class members;

    g.   Whether Defendants properly claimed a tip credit from the wages of Plaintiff and the Wisconsin Wage Class;

    h.   Whether Plaintiff and the Wisconsin Wage Class were actually paid the wage rate they were promised by Defendants;

    i.   The nature and extent of class-wide injury and the measure of damages for those injuries.

191.    In recognition of the services Plaintiff has rendered and will continue to render to the Wisconsin Wage Class, Plaintiff will request payment of a service award upon resolution of this action.

192.    Common questions of law and fact exist as to the Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Unjust Enrichment Class members individually and include, but are not limited to:

    a.   Whether Plaintiff and the Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

    b.   Whether Plaintiff and the Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

    c.   Whether Plaintiff and the Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d.   Whether Plaintiff and the Unjust Enrichment Class conferred a measurable benefit on Defendants;

e.   Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

f.   How much it would have cost Defendants to operate their business but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

g.   Whether Defendants were aware of the benefit that was being conferred on them by Plaintiff and the Unjust Enrichment Class;

h.   The nature and extent of class-wide injury and the measure of damages for those injuries.

193.   In recognition of the services Plaintiff has rendered and will continue to render to the Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

194.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

195.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

196.   Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

197.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

198.     Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

199.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

200.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

201.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Wis. Stat. § 104.01 *et seq.***
**(On Behalf of Plaintiff and the Wisconsin Wage Class)**

202.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

203.     Defendants paid Plaintiff and the Wisconsin Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

204.     Defendants ostensibly paid Plaintiff and the Wisconsin Wage Class at or close to minimum wage for the hours they worked.

205.   Because Defendants required Plaintiff and the Wisconsin Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

206.   By not paying Plaintiff and the Wisconsin Wage Class at least minimum wage for each hour worked, Defendants have violated Wis. Stat. § 104.01 et seq.

207.   As a result of Defendants' violations, Plaintiff and the Wisconsin Wage Class are entitled to unpaid minimum wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs.

**Count 3**
**Untimely Payment of Wages – Wis. Stat. § 109.01 *et seq*.**
**(On Behalf of Plaintiff and the Wisconsin Wage Class)**

208.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

209.   During all relevant times, Defendants were covered by Wis. Stat. § 109.02, and Plaintiff and the Wisconsin Wage Class were employees within the meaning of Wis. Stat. § 109.01 and were not exempt from its protections.

210.   Wis. Stat. § 109.03(1) requires that Defendants pay Plaintiff and the Wisconsin Wage Class all wages earned by the employee to a day not more than 31 days prior to the date of payment.

211.   By failing to pay Plaintiff and the Wisconsin Wage Class all wages due to them under the FLSA and Wisconsin wage and hour law, Defendants have also violated Wis. Stat. § 109.03(1).

31

212.   Plaintiff and the Wisconsin Wage Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty-one (31) days beyond their regularly scheduled payday.

213.   Plaintiff's and the Wisconsin Wage Class's entitlement to the wages sought herein is and has been undisputed.

214.   In violating Wisconsin law, Defendants acted willfully, without a good faith basis and with reckless disregard to Wisconsin law.

215.   As a result of Defendants' violations, Plaintiff and the Wisconsin Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional .5 times unpaid wages/unreimbursed expenses in damages under Wis. Stat. § 109.11(2)(a), costs, and attorneys' fees.

### Count 4
### Unjust Enrichment
### (On Behalf of Plaintiff and the Unjust Enrichment Class)

213.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

214.   The Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to work for Defendants.

215.   Defendants are aware of and have accepted the benefit conferred on them by the Unjust Enrichment Class.

216.   It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Unjust Enrichment Class without commensurate compensation.

217.   Plaintiff and the Unjust Enrichment Class are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

**WHEREFORE**, Plaintiff Ashleigh Hoffman prays for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Wisconsin Wage Class and the Unjust Enrichment Class and counsel of record as Class Counsel of both Rule 23 Classes.

E.      A declaratory judgment that the practices complained of herein are unlawful under Wis. Stat. § 104, Wis. Stat. § 109.03(1), and the Wisconsin wage and hour laws.

F.      An award of unpaid minimum wages and unreimbursed expenses due under Wis. Stat. § 104, Wis. Stat. § 109.03(1), and Wisconsin wage and hour laws.

G.      An award of damages under Wis. Stat. § 109.11(2)(a), based on Defendants' failure to pay wages, calculated as an additional .5 times of back wages.

H.      Liquidated damages under Wis. Stat. § 109.03(1).

I.      An award of restitution as a result of unjust enrichment to the Unjust Enrichment Class.

J.      An award of prejudgment and post-judgment interest.

K.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.     Such other legal and equitable relief as the Court deems appropriate.

.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of the maximum number of jurors permitted by law.

Dated this 15th day of January, 2022

BILLER & KIMBLE, LLC

Andrew R. Biller *(pro hac vice forthcoming)*
Andrew P. Kimble *(pro hac vice forthcoming)*
Emily A. Hubbard *(pro hac vice forthcoming)*
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*
*www.billerkimble.com*

WILKING LAW FIRM, PLLC

*/s/ Leo F.J. Wilking*
Leo F.J. Wilking (ND ID # 03629)
Wilking Law Firm, PLLC
P. O. Box 3085
Fargo, North Dakota 58108-3085
Phone: (701) 356-6823
Fax: (701) 478-7621
*lwilking@wilkinglaw.com*

*Counsel for Plaintiff and the putative class*